UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROXANNE MOYER, INDIVIDUALLY** | * | **CIVIL ACTION NO: 2:11-3185** |
| **AND ON BEHALF OF HER DECEDENT** | * | |
| **HUSBAND, SAMUEL N. MOYER** | * | **SECTION: E** |
| | * | |
| **VERSUS** | * | **MAGISTRATE DIV.: 2** |
| | * | |
| **SIEMENS VAI SERVICES, L.L.C,** | * | |
| **SIGNAL METAL INDUSTRIES, INC.,** | * | **JURY TRIAL REQUESTED** |

*******************************************

**PLAINTIFF'S COUNTERSTATEMENT IN OPPOSITION TO SIEMENS' MOTION FOR SUMMARY JUDGMENT**

In accordance with the Court's Order (R. Doc. 133), Plaintiff, Roxanne Moyer, et al., submits this Counterstatement providing the appropriate admissions and/or denials to Siemens Industry Inc.'s ["Siemens"] Statement of Undisputed Facts (R.Doc. 92-3.)

1. On February 1, 2011, molten steel erupted from a ladle and knocked Samuel Moyer from an argon stir station at the ArcelorMittal LaPlace steel mill in LaPlace, Louisiana. (See Exhibit A, Plaintiff's Complaint; Exhibit B, Plaintiff's Amended Complaint).

   **Plaintiff's Response: Plaintiff stipulates to this fact.**

2. Plaintiff filed a Complaint and Amended Complaint under the Louisiana Products Liability Act against Siemens. (See Exhibit A, Plaintiff's Complaint; Exhibit B, Plaintiff's Amended Complaint).

   **Plaintiff's Response: Plaintiff stipulates to this fact.**

3. Plaintiff accuses five products: the argon stir station platform ("argon stir station"), the ladle transfer car, the ladle, the ladle stir plugs and nest block assembly. (See Exhibit A, Plaintiff's Complaint; Exhibit B, Plaintiff's Amended Complaint).

   **Plaintiff's Response: Plaintiff stipulates to this fact in part. Plaintiff indeed takes aim at the argon stir station platform, the ladle, and the ladle car. Though mentioned in her Complaint, Plaintiff does not pursue claims centering on the ladle stir plug or nest block assembly against either Signal Metal or Siemens.**

1

4. Of those products, Siemens (through its predecessor Voest Alpine) designed, constructed and installed just two: the argon stir station and ladle transfer car. (See Exhibit C, Bill King Deposition: pp. 13-14; pp. 24-26).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

5. Co-defendant Signal Metal designed and manufactured the ladle at issue in approximately 2005. Dismissed party North American Refractory Company designed and manufactured the ladle stir plug and nest block assembly in approximately 2010. (See Exhibit D, William Mann Deposition, pp. 16-17; Exhibit E, Mark Smith Affidavit)

**Plaintiff's Response: Plaintiff stipulates to this fact.**

6. Siemens denied the allegations contained in Plaintiff's Complaint and Amended Complaint. (See Exhibit F, Siemens Answer to Complaint; Exhibit G, Siemens Answer to Amended Complaint).

**Plaintiff's Response: Plaintiff admits that Siemens did so deny the allegations in her Complaint and Amended Complaint.**

7. Plaintiff voluntarily withdrew claims that Siemens' ladle transfer car and argon stir station were unreasonably dangerous in construction or composition (pursuant to La. R.S 9:2800.55); or that the ladle transfer car and argon stir station did not conform to an express warranty (pursuant to La. R.S. 9:2800.58). (See Exhibit H, Ex Parte Order).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

8. The LaPlace, Louisiana steel mill, including the argon stir station and ladle transfer car, was built by Siemens's predecessor-in-interest, Voest Alpine ("Siemens") in approximately 1981. (See Exhibit C, Bill King Deposition: pp. 13-14; pp. 24-26; Exhibit I, Frank Dietrich's Expert Report; Exhibit K, Peter Wimmer Affidavit).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

9. The argon stir station and ladle transfer car began to operate in the plant in approximately 1981. (See Exhibit C, Bill King Deposition: pp. 13-14; pp. 24-26).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

10. The argon stir station and ladle transfer car were custom designed by Siemens for use by Siemens in Siemens' own steel mill. (See Exhibit K, Peter Wimmer's Affidavit).

**Plaintiff's Response: Plaintiff denies/disputes this fact. The only basis for this statement is the proffered Affidavit of Peter Wimmer, who relies on largely illegible and incomprehensible engineering drawings from a project that was completed over 10 years before he even began work for Siemens/Voest Alpine. Plaintiff sets forth her opposition to this item in her Memorandum in Opposition to Siemens' Motion for Summary Judgment. *See* R. Doc. 110, pp. 17-20.**

11. Siemens owned and operated the steel mill until it was sold to Bayou Steel in June 1986. (See Exhibit L, June 16, 1986 Acquisition Agreement).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

12. ArcelorMittal purchased the mill in 2008 and operated it through the date of the accident. (See Exhibit C, Bill King Deposition, pp. 69-70).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

13. The ladle transfer car is a structure that moves along rails embedded within concrete in the steel mill floor. ( See Exhibit C, Bill King Deposition, pp. 22- 23, pp. 30-37).

**Plaintiff's Response: Plaintiff stipulates to this fact as written and incorporates her arguments that despite this fact, the ladle transfer car is not an "immovable." *See* R. Doc. 110, pp. 14-16.**

14. Electric cabling hardwired directly into the ladle transfer car's gearbox power the ladle transfer car. (See Exhibit C, Bill King Deposition, pp. 22-23, pp. 30-37).

**Plaintiff's Response: Plaintiff denies this fact given its use of the term "hardwired." Plaintiff disputes that the electric cabling was hardwired into the car. To the contrary, Arcelor Mittal employee, Wayne Simmons testified that the electrical cables are simply unscrewed from the car in a process that takes two minutes. See R. Doc. 110, pp. 15 *citing* Exhibit G, Testimony of Wayne Simmons, pp. 60-61. This distinction pertains to permanency of the transfer car's attachment to the ground. The testimony of Mr. Simmons clearly shows that the transfer car is easily removable from the rail.**

15. The ladle transfer car's purpose is to travel along rails embedded in concrete within the foundation of the steel mill floor. (See Exhibit C, Bill King Deposition, pp. 43-46).

**Plaintiff's Response: Plaintiff stipulates to this fact as written and incorporates her arguments that despite this fact, the ladle transfer car is not an "immovable." *See* R. Doc. 110, pp. 14-16.**

16. Removing the rails would require a jack-hammer. (See Exhibit C, Bill King Deposition, pp. 43- 46).

**Plaintiff's Response: Plaintiff stipulates to this fact as written and incorporates her arguments that despite this fact, the ladle transfer car is not an "immovable." *See* R. Doc. 110, pp. 14-16.**

17. At the time of the accident, the ladle transfer car moved the ladle to an argon stir station. (See Exhibit A, Plaintiff's Complaint, Paragraph 11-12; Exhibit C, Bill King Deposition, pp. 24-26; pp. 56-57).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

18. The argon stir station is a multilevel, immovable work platform embedded into the mill foundation. (See Exhibit A, Plaintiff's Complaint, Paragraph 11- 12; Exhibit C, Bill King Deposition, pp. 24-26; pp. 56-57).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

19. The accident occurred as Mr. Moyer was standing on the argon stir station and was manually decoupling the argon hose from the ladle. (See Exhibit A, Plaintiff's Complaint; Exhibit B, Plaintiff's Amended Complaint; Exhibit C, Bill King Deposition, pp.42-43).

**Plaintiff's Response: Plaintiff stipulates to this fact with the minor exception that he was attempting to decouple the hose, but did not reach the point of actually uncoupling it.**

20. Molten steel within the ladle erupted and knocked him off of the argon stir station to the mill floor below. (See Exhibit A, Plaintiff's Complaint; Exhibit B, Plaintiff's Amended Complaint).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

21. Before the accident, ArcelorMittal knew that eruptions of molten steel from a ladle constitute an industry hazard. (See Exhibit M, Blaine Ockerman Deposition; pp. 68-69).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

22. Before the accident, ArcelorMittal knew that manual coupling introduces hazards during the coupling and uncoupling process; (See Exhibit N, Larry Taylor Deposition. pp. 54-66).

**Plaintiff's Response: Plaintiff denies this fact.  The portions cited by Siemens in Exhibit N, Larry Taylor Deposition, pp. 54-66 do not support the statement.  Larry Taylor clearly testified that he was a member of the Joint Safety and Health Committee for Arcelor Mittal.  Mr. Taylor stated that "safety issues relative to**

4

**connecting and disconnecting argon hoses" were never discussed because there had never been an incident.** *See* **Exhibit N, Larry Taylor, pp. 57-58.**

23. Before the accident, ArcelorMittal knew of the existence of automatic gas coupling technology as a means to prevent injury to operators; (See Exhibit N, Larry Taylor Deposition. pp. 45-47; 65-66).

**Plaintiff's Response:  Plaintiff denies this fact as written. The passages cited by the Defendant do not support the statement.  Larry Taylor testified that he knew of Auto Coupling and that it was identified as a best practice. Exhibit N, Larry Taylor Deposition. p. 65-66. However, Plaintiff denies the editorial comment made by Siemens based on Larry Taylor's testimony because he does not discuss his knowledge of AGC "as a means to prevent injury to operators."**

24. Before the accident, ArcelorMittal knew of the need to protect operators from exposure to molten steel and height hazards. (See Exhibit M, Blaine Ockerman Deposition pp.93-94; Exhibit O, Gary Lefko Deposition, pp. 125-126).

**Plaintiff's Response: Plaintiff stipulates to this fact.**

25. Siemens' predecessor warned the LaPlace steel mill about ladle eruptions by way of letter in 1996. (Exhibit R, May 21, 1996 Letter to from Voest Alpine to Bayou Steel).

**Plaintiff's Response: Plaintiff stipulates to this fact.  However, Plaintiff maintains that this letter is nonetheless deficient for its failure to make any warning about the ladle car or stir station platform's design, which exposed steel workers to risk of harm during a ladle eruption due to the absence of auto coupling and absence of shielding, respectively.** *See* **R. Doc. 110, pp. 28-32.**

26. Plaintiff's expert Mr. Dietrich opined that with or without shielding, the argon stir station is defective unless automatic gas coupling is integrated into a ladle transfer car. (Exhibit P, Frank Dietrich Deposition; pp. 411-412).

**Plaintiff's Response: Plaintiff stipulates to the testimony of her expert, but denies the editorial statement because it conflates Frank Dietrich's testimony.  It is common sense that if the ladle car has auto coupling then the steel worker, Sam Moyer, is eliminated from being on the platform, and therefore shielding on the platform is unnecessary. See R. Doc. 110, pp. 30-31.**

5

        Respectfully submitted,

        **DAVIS, SAUNDERS & MILLER, PLC**

        /s/ *Joseph M. Miller*

        **JOSEPH M. MILLER (#30636)**
        **BENJAMIN B. SAUNDERS (#11733)**
        **CARISA GERMAN-ODEN (#31463)**
        400 Mariners Plaza Drive, Suite 401
        Mandeville, LA 70448
        Telephone:    (985) 612-3070
        Facsimile:    (985)612-3072
        **Attorneys for Plaintiff, Roxanne Moyer,**
        **Individually and on Behalf of her Decedent**
        **Husband, Samuel N. Moyer**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of April 2013, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of filing to counsel of record.

        /s/ *Joseph M. Miller*

        **JOSEPH M. MILLER**