UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ROXANNE MOYER,**                                                    **CIVIL ACTION**
    **Plaintiff**

**VERSUS**                                                                      **No. 11-3185**

**SIEMENS VAI SERVICES, LLC, et al.,**               **SECTION "E"**
    **Defendants**

## ORDER AND REASONS

Before the Court is a Motion for New Trial filed by plaintiff Roxanne Moyer ("Ms. Moyer").[1] Defendants Siemens Industry, Inc. ("Siemens")[2] and Signal Metal Industries, Inc. ("Signal")[3] oppose plaintiff's motion. For reasons set forth below, plaintiff's Motion for New Trial is **DENIED**.

## BACKGROUND

On February 1, 2011, Samuel Moyer ("Mr. Moyer") was killed during an industrial accident at the ArcelorMittal LaPlace steel mill (referred to herein as the "steel plant") in LaPlace, Louisiana.[4] Mr. Moyer was working at the steel plant as an ArcelorMittal employee.[5] At the moment of Mr. Moyer's accident, he was preparing to manually disconnect an argon hose from a ladle, standing with one foot on the stir station and one foot on the transfer car. The molten steel in the ladle erupted, knocking Mr. Moyer to the

---

[1] R. Doc. 259.

[2] R. Doc. 270.

[3] R. Doc. 271.

[4] *See* R. Doc. 1. Complaint.

[5] *Id.*

1

floor and covering most of his body in molten steel.[6] Mr. Moyer sustained severe burns to most of his body and died approximately thirty hours after the accident.[7]

Plaintiff, Ms. Moyer, filed a lawsuit for damages under the Louisiana Products Liability Act ("LPLA") in December 2011.[8] In her complaint, Ms. Moyer named several entities she claimed were responsible for Mr. Moyer's accident and the damages resulting from that accident,[9] including Siemens, Signal, Danieli Corporation ("Danieli"), North American Refractories Company, Inc. ("NARCO"), and Black Diamond Capital Management, LLC ("Black Diamond"). Plaintiff alleged these entities manufactured various component parts of the steel plant that were: (1) unreasonably dangerous in construction or composition; (2) unreasonably dangerous in design; (3) unreasonably dangerous because adequate warnings about the products had not been provided; and (4) unreasonably dangerous because the products did not conform to an express warranty of the manufacturer.[10] Plaintiff voluntarily dismissed her claims against Danieli, Black Diamond, and NARCO.[11] Plaintiff did not sue Bayou Steel Corporation, ArcelorMittal

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] Plaintiff seeks the following survival action damages on behalf of Mr. Moyer: (1) conscious physical pain and suffering; (2) conscious mental pain and suffering; (3) medical expenses; and (4) funeral expenses. Plaintiff also seeks the following wrongful death damages on her own behalf: (1) loss of love; (2) loss of affection; (3) loss of services; (4) loss of support; (5) loss of society; and (6) grief.

[10] R. Doc. 1.

[11] *See* R. Doc. 64; R. Doc. 67; R. Doc. 82.

LaPlace, or ArcelorMittal USA[12] (the "non-parties") because those entities are immune from liability under the Louisiana Workers' Compensation Statutes. Siemens and Signal remained the only defendants at trial.

Jury Instruction 21 advised the jurors regarding the allocation of fault to Siemens and Signal based on the LPLA and to the non-parties based on general principles of negligence law:

> Plaintiff's claims against Siemens and Signal Metal are governed solely by the provisions of the Louisiana Products Liability Act as I have just read them to you. If you allocate fault to Siemens or Signal Metal, you may only allocate fault pursuant to these provisions.
> The fault of any other person or entity who you believe was a substantial factor in causing the plaintiff's injuries is governed under general negligence principles. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. Louisiana courts resolve most negligence cases by employing a duty/risk analysis, under which five separate elements must be shown: (1) whether the person or entity had a duty to conform his conduct to a specific standard of care; (2) whether the person's or entity's conduct failed to conform to the appropriate standard of care; (3) whether the person's or entity's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) whether the person's or entity's substandard conduct was a legal cause of the plaintiff's injuries; and (5) whether the plaintiff was damaged.
> If you find that a substantial contributing factor to the causation of plaintiff's injuries was the negligence of Bayou Steel Corporation, ArcelorMittal USA, and/or ArcelorMittal LaPlace, then you must allocate fault respectively upon it or them.[13]

Jury Instruction 22 advised the jury that fault must be determined even with respect to a non-party or a person or entity which is immune by statute:

---

[12]Bayou Steel is the former employer/operator of the facility. ArcelorMittal LaPlace was the employer/operator of the facility at the time of the accident. ArcelorMittal USA is the parent company of ArcelorMittal LaPlace. *See* R. Doc. 195.

[13]R. Doc. 247. Instruction 21; R. Doc. 252. Transcript of Afternoon Session of July 19, 2013, p. 1124.

In an action for damages where a person suffers injury, death, or loss, the degree or percentage of all persons or entities causing or contributing to the injury, death or loss shall be determined, regardless of whether the person or entity is a party to the action or a non-party and regardless of the person's or entity's insolvency, ability to pay, immunity by statute or that the other person's or entity's identity is not known or reasonably ascertainable.[14]

Section C of the jury verdict form read as follows:[15]

Please allocate on a percentage basis the degree of fault, if any, which you attribute to each of the following entities. All numerical percentages you enter in this question should add up to a total of 100%. The arrangement of the names does not suggest any priority of the allocation of fault.

| | |
|---|---|
| Bayou Steel Corporation | _____ % |
| ArcelorMittal LaPlace | _____ % |
| ArcelorMittal USA (LCNA) | _____ % |
| Signal Metal Industries | _____ % |
| Siemens Industry, Inc. | _____ % |

After a five day jury trial, the jury rendered a verdict in the defendants' favor finding no liability on behalf of Siemens or Signal. On Section C of the jury verdict form, the jury allocated one-third fault each to Bayou Steel, ArcelorMittal LaPlace, and ArcelorMittal USA and found damages totalled $2,602,314.00.[16] Plaintiff filed a motion for a new trial under Federal Rules of Civil Procedure 59(a) and 51(d)(2), arguing the jury instructions and jury verdict form created juror confusion because the fault allocation and the damages calculation by the jury were unnecessary. The plaintiff maintains that having the jury perform these tasks constituted legal error because the instructions and verdict form misled the jury causing it to "render a verdict of $2.7 million against the non-parties," when such

---

[14] *Id.*

[15] R. Doc. 245-3. Completed Jury Verdict Form.

[16] *Id.*

4

a verdict could never be collected.[17] Plaintiff asserts that the jury should have been prohibited from allocating fault and calculating damages if the jury found Siemens and Signal not liable in Sections A and B of the jury verdict form. Plaintiff also argues the jurors should have been instructed regarding the Workers' Compensation immunity enjoyed by the non-parties.[18]

## LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). *See Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985). Although the rule does not specify the exact grounds for granting a new trial, Rule 59(a) allows a court to grant a new trial if it "finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *See Smith v. Transworld Co.*, 773, F.2d at 613 (citing *Reed Bros., Inc. v. Monsato Co.*, 525 F.2d 486, 499-50 (8th Cir. 1975).

Plaintiff argues the Court committed prejudicial error by failing to instruct the jury the non-parties were immune from liability under Louisiana's Workers' Compensation Statutes and by directing the jury to decide damages and allocate fault even though the jury "had checked 'No' regarding plaintiff's claims under the Louisiana Product Liability Act."[19] Under Federal Rule of Civil Procedure 51(d), a party must object at trial to a jury instruction or else the right to challenge the instruction is waived. *See Engler v. Winfrey*, 201 F.3d

---

[17]R. Doc. 259, p. 2.

[18]R. Doc. 259-1, p. 2.

[19]R. Doc. 259-1, p. 1.

5

680, 689 (5th Cir. 2000); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999). If a challenge is waived, the court may only grant relief under Rule 51(d)(2), which provides: "A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2). Under Rule 51, objections must be preserved with respect to both jury verdict forms and jury instructions. *See generally Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d at 1329. The plain error standard requires the objecting party to show "an incorrect statement of law was probably responsible for an incorrect verdict, leading to substantial injustice." *Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1169 (5th Cir. 1990). To justify a new trial, the jury instructions and/or jury verdict form must contain a plain error in the form of an incorrect statement of law that was probably responsible for an incorrect verdict. *Id.*

The parties first submitted proposed jury instructions and a proposed jury verdict form on June 28, 2013, prior to trial.[20] The proposed jury verdict form was characterized as "joint," but the parties actually submitted two separate verdict forms in the same document.[21] The proposed jury instructions contained some instructions that were mutually agreed upon, and others that were identified as "Plaintiff's" or "Defendant's," with various objections from both parties.[22] The plaintiff did not propose a jury instruction regarding Workers' Compensation immunity of the non-parties or object to the fact that one had not been included. Neither did plaintiff object to proposed Instruction 23 (Instruction 22 in the final version), which advised the jury to allocate fault to non-parties that may have caused

---

[20]R. Doc. 199; R. Doc. 200

[21]*See* R. Doc. 199. Proposed Jury Verdict Form.

[22]R. Doc. 200. Proposed Jury Instructions.

or contributed to the injury.[23]

The defendants' proposed jury verdict form included all three non-parties, ArcelorMittal LaPlace, Bayou Steel, and ArcelorMittal USA, in the list of entities eligible for allocation of fault and required the allocation of fault and calculation of damages, regardless of whether Siemens or Signal were found to be liable under the LPLA.[24] The plaintiff objected, arguing that fault should be allocated to the non-parties only if there is "sufficient proof to justify that the entity is at fault, and that fault contributed to Mr. Moyer['s] damages."[25] The plaintiff did not object to the inclusion of the non-parties based upon their immunity under Workers' Compensation Statutes or based upon whether or not Siemens and Signal were held liable under the LPLA. The plaintiff's proposed jury verdict form directed the jury to allocate fault to only two of the non-parties, ArcelorMittal LaPlace and Bayou Steel.[26] Plaintiff's proposed jury verdict form did not direct the jury to skip the fault allocation or damages calculation if it found no liability on behalf of Signal or Siemens.

After the Court's June 28, 2013 order denying defendants' motion for summary judgment,[27] the parties were required to submit a revised joint proposed jury verdict form.[28] Again, parties submitted two separate jury verdict forms in the same document.[29] The defendants' proposed verdict form again listed all three non-parties in the allocation of fault

---

[23] R.Doc. 200, p. 34.

[24] R. Doc. 199, p. 9.

[25] *Id.*

[26] R. Doc. 199. Section G, "Apportionment of Fault" (p. 18).

[27] R. Doc. 195.

[28] R. Doc. 213.

[29] R. Doc. 227.

section.[30] Plaintiff lodged the same objection as she had to the defendants' earlier proposed form, arguing that only those entities proven to be at fault should be listed in the allocation of fault section.[31] Plaintiff failed to object to the inclusion of the non-parties based upon Workers' Compensation immunity or based upon whether or not Siemens and Signal were liable under the LPLA. Plaintiff's proposed jury verdict form again required the jury to allocate fault to only two of the non-parties, ArcelorMittal LaPlace and Bayou Steel, but the form required that allocation to be made and damages to be calculated regardless of the jury's finding of liability against Siemens or Signal.[32]

On July 18, 2013, the day before the final day of trial, the parties submitted to the Court a third proposed joint jury verdict form which required the jury to allocate fault to all three non-parties, whether or not the jury found Siemens and/or Signal liable under the LPLA.[33] Plaintiff objected to parts of the proposed joint verdict form, but did not object to the allocation of fault to non-parties based on immunity, or to the fact that the jury was to allocate fault and calculate damages regardless of the jury's finding of liability against Siemens or Signal. On the morning of the last day of trial, after considering the parties' third proposed jury verdict form and objections, the Court sent to the parties the jury verdict form the Court planned to provide to the jury.[34] In this version, the Court made

---

[30]R. Doc. 227. Defendant's Section C, "Allocation of Fault/Damages" (p. 8).

[31]*Id.*

[32]R. Doc. 227. Plaintiff's Section G, "Apportionment of Fault" (p. 17).

[33]R. Doc. 273.

[34]R. Doc. 274.

8

minor changes and altered the order of the questions.[35] The Court's verdict form directed the jury to allocate fault to all three non-parties and to calculate damages regardless of whether Siemens or Signal was found liable.[36]

On the last day of trial, before closing arguments, plaintiff's counsel was offered an opportunity to put plaintiff's objections to the jury instructions and jury verdict form on the record.[37] Plaintiff's counsel lodged three objections, none of which included a request to instruct the jury that the non-parties were exempt from liability or to remove the non-parties from the jury verdict form. Neither did plaintiff request that the jury be instructed not to allocate fault or calculate damages if it found no liability against Siemens or Signal. First, plaintiff raised the issue of whether Instruction 11 should have read "*a* proximate cause" or "*the* proximate cause."[38] Second, plaintiff raised the issue of which party should bear the burden of proof under Instruction 21.[39] Third, plaintiff raised the issue of whether the ArcelorMittal LaPlace's parent corporation should be included in Section C of the verdict form.[40] Plaintiff argued that ArcelorMittal USA should not be included in Section C because the trial testimony established it had not assumed a duty over workplace safety at the plant, and its status as a parent corporation alone did not create a duty of workplace

---

[35]R. Doc. 274. For example, the Court changed the "substantially contributed" language in the joint proposed verdict form to "proximate cause."

[36]R. Doc. 274.

[37]R. Doc. 257. Transcript of the Morning Session of July 19, 2013 (p. 1042).

[38]R. Doc. 257. Transcript of the Morning Session of July 19, 2013 (p. 1043).

[39]R. Doc. 257. Transcript of the Morning Session of July 19, 2013 (p. 1044).

[40]R. Doc. 257. Transcript of the Morning Session of July 19, 2013 (p. 1045).

safety over its subsidiary.[41] The Court overruled all of plaintiff's objections.[42]

Additionally, after closing arguments, but before charging the jury, the Court again discussed the jury verdict form with counsel.[43] Plaintiff's motion for new trial suggests that the jury should have been instructed to skip the allocation of fault and damages calculation *entirely* if the jury did not find Siemens and Signal liable in Sections A and B, because plaintiff could not recover against the non-parties even if they were allocated fault.[44] However, plaintiff did not propose this alternative when the Court discussed with counsel how to handle the allocation of fault in Section C if the jury did not find liability against Siemens or Signal in Sections A or B. In fact, plaintiff's counsel even suggested the Court could simply enter judgment even if the jury allocated fault in Section C inconsistently with the answers in Sections A and B.[45]

The Court sent the parties a copy of the final verdict form before charging the jury on the afternoon of July 19, 2013.[46] After the jury began deliberations, the Court afforded the parties an additional opportunity to further document or explain their objections to the

---

[41] R. Doc. 257. Transcript of the Morning Session of July 19, 2013 (p. 1045).

[42] R. Doc. 257. Transcript of the Morning Session of July 19, 2013 (p. 1046).

[43] R. Doc. 257. Transcript of the Morning Session of July 19, 2013 (p. 1104). Section A contained questions determining the liability of Signal. Section B contained questions determining the liability of Siemens. Section C required the jury to allocate fault amongst the parties.

[44] R. Doc. 259-1, p. 2.

[45] R. Doc. 257. Transcript of the Morning Session of July 19, 2013 (p. 1106). The Court suggested a jury verdict form instructing the jury not to allocate fault to Signal or Siemens if the jury did not find Signal or Siemens liable in Sections A and B. In response, plaintiff's attorney remarked: "Your Honor, I think it does get complicated. The only other suggestion I could add is that post-verdict the Court could enter a judgment in according with the questions in accordance with the law [*sic*]. So I mean, if there is a bunch of no's [in Sections A and B] and a hundred percent fault, I think it's time to enter a judgment on the *questions*." (p. 1106)(emphasis added).

[46] R. Doc. 245-3. Final Jury Verdict Form.

10

instructions or the verdict form on the record. Plaintiff reiterated the same three objections made earlier that day.[47]

There can be no doubt that the plaintiff failed to object timely to the portion of the jury instructions and the jury verdict form now at issue, and that as a result the plain error standard of Rule 51(d)(2) applies. Indeed, plaintiff concedes as much.[48] To prove plain error, the plaintiff must show the jury instruction or the jury verdict form included an incorrect statement of law. *See ARA Auto. Group v. Cent. Garage*, 124 F.3d 720, 730 (5th Cir. 1997); *United States v. Curbelo*, 726 F.3d 1260, 1270 (11th Cir. 2013). Plaintiff has failed to show the jury was incorrectly instructed on Louisiana's law of negligence, comparative fault, the LPLA, or Workers' Compensation, or that the verdict form incorporated an incorrect principle of law. Nor has the plaintiff shown that the jury instructions or the jury verdict form resulted in an incorrect verdict. Instead, the instructions correctly instructed, and the verdict form correctly required, the jurors to allocate fault to all persons who may have caused or contributed to the damage, regardless of whether such persons were parties or non-parties.

The jury verdict form required the jury to allocate fault to the non-parties pursuant to Louisiana Code of Civil Procedure article 1812. The article provides in part:

> C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
> . . .
>  (2)(a) If appropriate under the facts adduced at trial, whether any party or nonparty, other than the person suffering injury, death or loss, was at fault, and if so:

---

[47]R. Doc. 252. Transcript of the Afternoon Session of July 19, 2013 (p. 1133).

[48]*See* R. Doc. 259-1. Plaintiff's Memorandum in Support of Plaintiff's Motion for New Trial, p. 5.

11

>             (i) Whether such fault was the legal cause of the damages, and, if so:
>             (ii) The degree of such fault, expressed in percentage.
>     (b) For purposes of this paragraph, nonparty means a person alleged by any party to be at fault, including but not limited to:
>             (i) A person who has obtained a released from liability from the person suffering injury, death, or loss.
>             (ii) A person who exists but whose identity is unknown.
>             (iii) A person who may be immune from suit because of immunity granted by statute.

La. C.C.P. art. 1812

Furthermore, Instruction 21 correctly explained the principles of Civil Code article 2323(A), advising the jurors to allocate fault to the non-parties if they found them to be responsible for plaintiff's injuries.[49] Louisiana Civil Code article 2323(A) provides in part:

> In an action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032 [Workers' Compensation Immunity], or that the other person's identity is not known or reasonably ascertainable.

La. C.C. art. 2323(A)

The Fifth Circuit has held that article 2323(A) requires "the fact finder to apportion fault among all negligent parties regardless of whether the plaintiff can recover from a particular party or not ... Therefore, fault must be attributed to a negligent employer even though the employer is immune from suit under the Louisiana Workers' Compensation Statute." *Fontenot v. Dual Drilling Co.*, 179 F.3d 969, 973 (5th Cir. 1999). Moreover, plaintiff has not pointed to any authority, and the Court cannot find any authority, requiring the jury to be instructed than an employer is immune from liability under

---

[49]R. Doc. 247. Instructions read to the jury. *See also* Doc. 252. Transcript of Afternoon Session of July 19, 2013 where the Court read the instructions to the jury (p. 1124).

Louisiana Workers' Compensation law. There was no plain error in the jury verdict form or the jury instructions in the form of an incorrect statement of the law.

Additionally, there is no indication that the instructions or the verdict form created jury confusion or resulted in an incorrect verdict. The jurors filled out the verdict form consistently, and fully, and did not ask the Court any questions during deliberations. The fact that the jury allocated fault and calculated damages, even though the jury "had checked 'No' regarding plaintiff's claims under the Louisiana Products Liability Act,"[50] does not establish that the verdict was incorrect as the result of an incorrect statement of the law.

Certainly the accident that befell Mr. Moyer was a tragedy for him and his family and the plaintiff has the sympathy of the Court. But without plain error in the form of an incorrect statement of law that was probably responsible for an incorrect verdict, a new trial is not justified under the law. The Court must be and is guided by the law.

## CONCLUSION

For all the reasons set forth herein, **IT IS ORDERED** that plaintiff's Motion for New Trial is **DENIED**.

New Orleans, Louisiana, this  29th  day of October, 2013.

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[50] R. Doc. 259-1, p. 1.